UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY L. REESE<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:20-CV-01320-SO<br><br>JUDGE SOLOMON OLIVER, JR.<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

### INTRODUCTION

Plaintiff Kimberly L. Reese challenges the Commissioner of Social Security's decision denying supplemental security income ("SSI"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 25, 2021, this matter was reassigned to me pursuant to General Order 2021-06 (non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

On November 3, 2017, Ms. Reese protectively filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning on April 1, 2016. (Tr. 159-165). Ms. Reese's claim was denied initially on January 23, 2018, and upon reconsideration on May 31, 2018. (Tr. 79-92, 94-107). On June 26, 2019, an administrative law judge found Ms. Reese not disabled. (Tr. 12-24). On May 28, 2020, the Appeals Council denied Ms. Reese's request for review, thereby making the ALJ's denial of benefits the Commissioner's final decision. (Tr. 1-6). Ms. Lynch then filed her complaint in this Court. (ECF #1).

**FACTUAL BACKGROUND**

I.   **ADMINISTRATIVE HEARING**

Ms. Reese appeared at the hearing on May 1, 2019 with counsel. (Tr. 29). Also present was Thomas Nimberger, a vocational expert. (*Id.*). The following summarizes the testimony presented during the hearing before the ALJ.

Ms. Reese has diabetes mellitus Type 2, diagnosed in April 2016, which causes sharp pains in her feet and fingers. (Tr. 35-36). She experiences pain in her feet about once or twice a week. (Tr. 45). She uses massage for some relief, but also takes medication and works with a nutritionist to control her blood sugar. (Tr. 42, 45). She also has sarcoidosis with pulmonary involvement. (Tr. 41). Ms. Reese uses an inhaler daily and receives breathing treatments every four to six weeks at the Cleveland Clinic. (Tr. 37). Though Ms. Reese wears glasses she still experiences blurry vision and runny eyes every other day, which, according to her doctor, is related to sarcoidosis. (Tr. 41). Ms. Reese's eyes are sensitive to pressure and light. (Tr. 45-46).

Ms. Reese completed ninth grade and does not have a high school diploma or GED. (Tr. 34). Ms. Reese last worked in 2006 as a hotel housekeeper. (Tr. 34-35). She does not have a driver's license and relies on friends for transportation. (Tr. 34). She used to rely on public transportation but stopped after she was unable to walk on a flat surface for more than five minutes before requiring a one- or two-minute break to catch her breath. (Tr. 39, 40). When walking up a slight hill or climbing stairs, Ms. Reese must take a break every two minutes. (Tr. 41). Ms. Reese also experiences anxiety, especially in crowds, which causes hyperventilation. (Tr. 42-43).

On a typical day, Ms. Reese does not do much. Because she has difficulty sleeping at night, she sleeps during the day, helps her children with homework and meals, and maybe reads here and

there. (Tr. 37-38, 44). The children, both teenagers, help Ms. Reese with household chores. (Tr. 38). Ms. Reese can vacuum, wash dishes, and clean the bathroom, but only for about ten minutes before needing to break. (Tr. 38, 44).

The VE then testified. The ALJ asked the VE to assume a hypothetical individual of Ms. Reese's age and education who could perform work at the light exertional level with the following limitations: occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; stand and walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; avoid concentrated exposure to extreme heat and extreme cold, fumes, odors, dust, gases, poor ventilation, and humidity. (Tr. 47-48). The VE testified this hypothetical individual could work as an office cleaner (light, unskilled, SVP 2), a packager (light, unskilled, SVP 2), or a cashier (light, unskilled, SVP 2).

When the ALJ revised the inquiry to include occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat, the VE testified the hypothetical individual could work the same three positions previously identified. (Tr. 48-49).

When the proposed hypothetical individual was limited to sedentary work, occasional use of ramps and stairs, no exposure to fumes, dusts, gases, poor ventilation, and humidity, and additionally limited to performing simple, routine tasks with no fast pace or high production quotas, infrequent change, and superficial interactions with others (meaning no arbitration, negotiation, or responsibility for the safety of others), the VE testified that such an individual could work as an addresser or mailing house worker (sedentary, unskilled, SVP 2), a document preparer (sedentary, unskilled, SVP 2), or a table worker (sedentary, unskilled, SVP 2). (Tr. 49-50).

II.   PERSONAL AND VOCATIONAL EVIDENCE

Ms. Reese was 45 years old when she filed her initial applications, and had turned 46 by the time of the administrative hearing. (Tr. 33, 159). Ms. Reese's prior work does not meet substantial gainful activity earning levels and, therefore, she does not have past relevant work. (Tr. 22; *see also* 20 C.F.R. § 416.965).

Ms. Reese filled out an Adult Function Report. (Tr. 200-207). In it, she alleges her conditions limit her ability to work, causing shortness of breath, swollen legs and ankles, extreme exhaustion and fatigue, extreme anxiety, easy agitation, and watery eyes with blurry vision. (Tr. 200). Between the time she wakes up until she goes to bed, Ms. Reese's activity is limited to getting the children ready for school and straightening the house. (Tr. 206). Ms. Reese sleeps less when she feels depressed and more when not depressed. (*Id.*). She has difficulty bending over to dress and shave, getting into the bathtub, and playing with children. (*Id.*).

Ms. Reese does not need special reminders to care for personal needs but uses a pill box to manage her medication (Tr. 201). Each day, Ms. Reese prepares her own meals, which consist of frozen dinners and sandwiches. (*Id.*). Meal preparation is complete in five minutes. (*Id.*). Ms. Reese rarely prepares big meals because she becomes too tired. (*Id.*). She can complete some household chores, such as ironing (infrequently), vacuuming (twice a week), doing laundry (once a week); and cleaning dishes (daily). (*Id.*).

Ms. Reese goes outside about three times per week, but she never does yardwork because it is too strenuous for her. (Tr. 205). She does not drive and "gets out of breath easily." (*Id.*). She shops for groceries and supplies once a month, which takes about 60 to 90 minutes to complete. (*Id.*). Ms. Reese reads, watches television, and writes, but cannot do these activities when her vision

is blurred. (Tr. 202). She talks on the phone and visits with friends once a week and goes to the park and out to eat on a regular basis. (*Id.*).

Ms. Reese alleges her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, complete tasks, and concentrate. (Tr. 204). She is physically restricted due to pain and shortness of breath. (*Id.*). Ms. Reese can walk for three minutes before requiring a one- or two-minute rest. (*Id.*). She can pay attention for about twenty minutes, does not finish tasks to completion, and does not follow written or spoken instruction well. (*Id.*). Ms. Reese gets along well with authority figures but does not handle stress or changes in routine well. (Tr. 203).

Ms. Reese takes the following mediations: Victoza subcutaneous pen injector and Lantus insulin for diabetes mellitus; Breo Ellipta inhaler, Ventolin inhaler, and methotrexate for sarcoidosis; folic acid, amlodipine, and metoprolol for hypertension; escitalopram for anxiety; ferrous sulfate for iron deficiency; and potassium chloride for hypokalemia. (Tr. 1005-006). Ms. Reese also receives, for sarcoidosis, infliximab infusions and pentamidine in nebulization form every four to six weeks. (Tr. 1008).

Ms. Reese notes the following side effects of her medications: nausea, dizziness, bleeding gums, blurred vision, irregular heartbeat, thirst, leg discomfort, muscle weakness and stiffness, depression, stomach pain, gas, bloating, diarrhea, fatigue, sweating, confusion, dark urine with decreased output, shortness of breath, and fainting spells. (Tr. 207)

### III. RELEVANT MEDICAL EVIDENCE

**Type 2 diabetes mellitus**. Ms. Reese was diagnosed with Type II diabetes mellitus in 2016. Unable to tolerate Metformin, Ms. Reese takes Victoza. (Tr. 318). Her condition is characterized as uncontrolled and, at times, requires insulin use. (Tr. 319, 945).

5

**Pulmonary sarcoidosis**. Pulmonary sarcoidosis causes lumps of inflammatory cells to collect in the lungs.[1] Ms. Reese receives infliximab infusions and pentamidine nebulization treatments every four to six weeks. (Tr. 693). The infusion typically lasts one to two hours. She also took a weekly dose of methotrexate as part of her treatment regimen for sarcoidosis, but her most recent medical records show the medication was discontinued to address elevated hepatic (liver) enzymes. (Tr. 1049). Ms. Reese has consistently endorsed dyspnea on exertion, such that she becomes short of breath when hurrying or walking up a slight hill. (Tr. 902, 914, 928, 957, 970, 993, 1052).

**Anxiety**. Ms. Reese has chronic anxiety, triggered by exposure to large crowds. (Tr. 297). Her condition is well-controlled with escitalopram. (Tr. 297).

**Hospitalization**. On December 1, 2017, Ms. Reese went to the emergency department after experiencing heart palpitations, pressure behind her right eye, and blood in her stool. (Tr. 733). She also endorsed forehead numbness. (Tr. 737). After evaluation, Ms. Reese was found to be hypomagnesemic and hypokalemic, the likely cause of her heart palpitations. (Tr. 735-36). A chest x-ray revealed possible pneumonia. (Tr. 736). Ms. Reese's magnesium and potassium levels were repleted and she received antibiotics before discharge. (Tr. 736). The attending physician determined that Ms. Reese's use of hydrochlorothiazide (HCTZ) for hypertension was the likely cause of her hypokalemia and discontinued that medication. (Tr. 739).

IV. **CONSULTATIVE EXAMINATION**

Ms. Reese attended a consultative examination, following which the evaluator determined there was insufficient evidence to warrant a mental health diagnosis. (Tr. 796). The evaluator

---

[1] *Pulmonary Sarcoidosis*, Johns Hopkins Medicine. https://www.hopkinsmedicine.org/health/conditions-and-diseases/pulmonary-sarcoidosis (last visited September 24, 2021).

noted that Ms. Reese treats for anxiety and depression but does not identify her own symptoms as impairing her ability to work. (Tr. 798). During the evaluation, Ms. Reese's speech and thought processes were scattered and disorganized and she displayed difficulty staying on task and providing relevant information. (Tr. 795). The evaluator determined that Ms. Reese's difficulty in staying on task is not so limiting as to be debilitating or disabling. (Tr. 798). Ms. Reese herself denied that her mental health symptoms impair her ability to function. (Tr. 795).

### V.     MEDICAL OPINIONS

Ms. Reese's treating medical providers did not submit medical opinions for the ALJ to consider. State Agency medical consultants reviewed the medical evidence at the initial and reconsideration levels of the administrative review process. (Tr. 79-108). At the initial level, the medical consultant reviewed Ms. Reese's medical records and completed a Physical Residual Functional Capacity Assessment. (Tr. 89). The medical consultant adopted the residual functional capacity findings from a prior ALJ decision dated October 14, 2016. (*Id.*). The prior ALJ decision assessed Ms. Reese's residual functional capacity to perform light work with the following limitations:

> occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, occasionally climb ladders, ropes, and scaffolds, avoid concentrated exposure to extreme cold and heat, avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, avoid concentrated exposure to humidity, and limited to performing simple, routine tasks with no fast pace or high production quotas and infrequent change, superficial interaction with others, and low stress work.

(Tr. 64). The medical consultant noted that, according to the medical records, Ms. Reese's condition did not deteriorate from the time of the prior ALJ decision such that the ALJ's decision would not be reasonably supported. (Tr. 89).

7

On reconsideration, after review of additional medical evidence, a second consultant adopted the same limitations. (Tr. 104).

## THE ALJ'S DECISION

The ALJ's decision, dated June 26, 2019, included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since October 3, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: sarcoidosis, diabetes mellitus type II, hypertension, obesity, hyperlipidemia, dysfunction of major joints and anemia (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920 (d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; must avoid concentrated exposure to extreme cold and extreme heat; must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and must avoid concentrated exposure to humidity.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 11, 1972 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, since October 3, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-24).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006), *citing* 42 U.S.C. § 405(g). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can

act, without fear of court interference. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986), *citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.,* 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, will the claimant be determined disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Ms. Reese claims the ALJ's residual functional capacity assessment contravenes SSR 96-8p and is not supported by substantial evidence because the ALJ failed to consider properly the impact of Ms. Reese's symptoms and medication side-effects on her ability to perform work. (Pl.'s Br., ECF #14, PageID 1155). More specifically, she argues the assessment "did not fully account for Ms. Reese's difficulty with staying on task and reported breathing difficulty with any exertion." (*Id.* at 1156). Ms. Reese also notes the assessment "did not account for probable absenteeism due

11

to medical appointments and severe fatigue" and "did not address Ms. Reese's longstanding and uncontroverted complaints of severe medication side effects." (*Id.*).

The Commissioner responds that the ALJ appropriately considered these alleged limitations. It notes the ALJ's finding of mild limitation in Ms. Reese's ability to concentrate, persist, and maintain pace, and the ALJ's determination that the record supports a finding of breathlessness upon strenuous exercise. (Def.'s Br., ECF #16, PageID 1172). As to medication side effects, the Commissioner responds the ALJ did consider Ms. Reese's alleged symptoms but found they were not entirely consistent with the medical and other evidence. (*Id.*). The Commissioner pointedly notes "[Ms. Reese] does not explain how merely attending medical appointments—without evidence about their duration, necessity, or scheduling flexibility—equals being disabled." (*Id.*).

SSR 96-8p requires that a residual functional capacity assessment be based on all the relevant evidence in the record. SSR 96-8p, 1996 WL 374184 (July 2, 1996). An individual's residual functional capacity is an assessment of the most an individual "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all of an individual's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2), (3). The claimant bears the responsibility for providing the evidence used to make a residual functional capacity finding. 20 C.F.R. § 416.9445(a)(3).

I reject Ms. Reese's argument that the ALJ did not "fully account for" her difficulty staying on task and reported shortness of breath with any exertion. To the contrary, the ALJ considered the consultative examiner's conclusion that Ms. Reese may have some difficulty staying on task, but not to a debilitating or disabling level, and determined that Ms. Reese's mental impairment

posed only a mild limitation, such that it did not warrant finding any limitation within the residual functional capacity assessment. (Tr. 18, 19). In addition, the ALJ determined that, despite Ms. Reese's complaints of shortness of breath while walking, the record supports a finding of breathlessness upon strenuous exercise. (Tr. 22). In so concluding, the ALJ noted Ms. Reese's sarcoidosis was well-managed with treatment and did not significantly affect her activities of daily living, including her ability to care for her children, prepare meals, or perform some household chores. (Tr. 22).

Ms. Reese next contends the residual functional capacity assessment did not account for probable absenteeism due to medical appointments and severe fatigue, though she offers no further development of this claim. It is not this Court's function to search the administrative record for evidence to support an individual's argument. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). As discussed above, this Court may not conduct a *de novo* review in social security proceedings and cannot fashion arguments on a party's behalf.

To Ms. Reese's point regarding her medication, the ALJ listed the medication side-effects to which Ms. Reese subscribed but ultimately determined that Ms. Reese's statements were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 20). The ALJ considered Ms. Reese's medical records, which largely reflect unremarkable physical examinations and few changes to, or complaints about, her medications. Indeed, while Ms. Reese claims her complaints of severe medication side effects are "longstanding and uncontroverted," she cites only

13

a single hospital record in support. (Pl.'s Br., ECF #14, PageID 1157). That record provides that Ms. Reese suffered from hypokalemia, likely the result of her use of HCTZ for hypertension. (Tr. 739). Thereafter, Ms. Reese was not prescribed HCTZ, and her hypertension remained well-controlled. (Tr. 837). Ms. Reese does not point to other records supporting her argument.

The ALJ's residual functional capacity assessment adequately considered Ms. Reese's alleged impairments, symptoms, and side-effects, and the extent to which they are consistent with the objective medical evidence. Moreover, the ALJ's written decision finding Ms. Reese can perform work at the light exertional level with additional limitations is supported by substantial evidence.

## Conclusion

For the foregoing reasons, I recommend the final decision of the Commissioner of Social Security denying Ms. Reese's application for SSI be **AFFIRMED**.

Dated: September 28, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).